THE STATE OF OHIO, APPELLEE, *v.* HABEREK, APPELLANT.

(No. 53594—Decided April 18, 1988.)

John T. Corrigan, prosecuting attorney, and Kathleen Peterson, for appellee.

Gold, Rotatori, Schwartz & Gibbons Co., L.P.A., and Niki Z. Schwartz, for appellant.

KRUPANSKY, J. Defendant-appellant James F. Haberek and Kathleen Skube were indicted on April 22, 1986 for theft in office, R.C. 2921.41, and possession of criminal tools, R.C. 2923.24. Defendants elected to waive a jury. In the midst of trial Skube entered a plea and defendant Haberek, after trial, was found guilty of the charges set forth in the indictment on February 27, 1987.

On appeal, Haberek sets forth five assignments of error challenging various constitutional and procedural issues. The assignments of error are without merit. The trial court's judgment is affirmed.

On October 2, 1985 Walter Shipka was the Clerk of Parma Municipal Court. Defendant had been previously employed as Chief Deputy Clerk at the Parma Municipal Court from 1970 to August 1984. Defendant resigned in August 1984 in anticipation of his opposing Shipka in the upcoming Democratic primary for Parma Municipal Clerk of Court. Defendant did win the Democratic primary which was tantamount to winning the general election. Defendant was also an insurance agent and was employed in such capacity on October 2, 1985.

The record reveals in October 1984, subsequent to defendant's resignation, the city of Parma entered into a contract with the Cuyahoga Regional Information System ("CRIS"). One of the functions performed by CRIS provided the Parma Municipal Court with information commonly referred to as "LEADS," Law Enforcement Automated Data System. The computer function known as LEADS provided the Parma Municipal Court with a traffic offender's complete traffic violation history. The city of Parma paid $12,000 in 1985 for the CRIS system which provided the LEADS information. The record further revealed prior to the installation of the CRIS

system the Parma Municipal Court obtained its traffic offense information from the Parma Police Department which maintained a CRIS terminal.

Kathleen Skube was a deputy clerk at the Parma Municipal Court on October 2, 1985, having been employed with the clerk's office since 1974.

Skube testified that on October 2, 1985 defendant twice contacted her by telephone in order to run a LEADS on certain individuals. On October 2, 1985 defendant was not employed by the Parma Municipal Court. Skube punched in the individuals' social security numbers and telephonically conveyed the individuals' traffic offense information to defendant. Skube had the information printed and enclosed the LEADS information in an envelope. In this regard she utilized an envelope bearing the return address of Walter Shipka as Clerk of Parma Municipal Court. Skube sealed the envelope, inscribed the name "Jim" on the front and pinned it to a bulletin board above her desk.

Shipka testified he arrived at the clerk's office about 8:30 p.m. on October 2, 1985. Upon noticing the envelope he opened it and discovered the LEADS reports. The record revealed the individuals identified in the LEADS reports were prospective insureds of defendant. Terri L. Foose was an underwriting supervisor for the insurance company which was affiliated with defendant on October 2, 1985. The joint testimony of Foose and Shipka revealed obtaining a LEADS report on a prospective insured offered several advantages. First, a commercial company which provided a prospective insured's traffic history had a delay time of three to five days, i.e., it took three to five days to receive the traffic information after sending it to the company. Conversely, the LEADS system provided an almost instantaneous appraisal of the driver's traffic history. The advantage to the almost instantaneous assessment of the person's traffic history could inform the agent more quickly of (a) whether the prospective insured qualified for a preferred rate or (b) whether the prospective insured qualified for any insurance. A second advantage to utilization of the LEADS system provided a complete traffic history; the commercial company provided traffic history for only the previous three years. The advantage to knowing the complete history allowed the insurer to better gauge the prospective driver's insurance risk.

Upon opening the sealed envelope and discovering its contents Shipka informed law enforcement authorities who subsequently indicted defendant and Skube for their actions on October 2, 1985.

Skube was the LEADS supervisor at Parma Municipal Court. As the LEADS supervisor she attended CRIS seminars. These seminars stressed the confidentiality of the LEADS information, i.e., it was to be used for only law enforcement purposes and, in addition, was provided only to Parma court personnel. Shipka testified he informed defendant of the confidential nature of the CRIS system when defendant was chief deputy clerk and the Parma court utilized the CRIS computer located at the Parma Police Department.

In the midst of trial, the trial court accepted Skube's guilty plea to unauthorized use of property, R.C. 2913.04, in exchange for her testimony and nolled the remaining counts set forth in the indictment.

Skube and defendant testified they were unaware their actions on October 2, 1985 were criminal.

Defendant's first assignment of error follows:

"Appellant Haberek was denied his Sixth Amendment right to counsel by reason of: (A) a conflict of interest

between appellant and his jointly represented co-defendant, Kathy Skube, who pled guilty in mid-trial and became the key prosecution witness, (B) the trial judge's refusal to grant appellant's timely pre-trial motion for substitution of counsel, and (C) trial counsel's failure to seek suppression of evidence obtained from a patently unlawful search whose fruits formed the gravamen of the state's case against appellant."

This assignment of error is without merit.

Defendant contends he was denied his Sixth Amendment right to counsel based on the following tripartite rationale: (1) defendant was denied his right to conflict-free representation; (2) defendant was denied counsel of his choice; and (3) defense counsel's failure to seek suppression of the search of the envelope containing the LEADS reports constituted an unprofessional error which prejudiced defendant.

A defendant's right to conflict-free assistance of counsel is an element of his Sixth Amendment right to effective assistance of counsel. *Glasser* v. *United States* (1942), 315 U.S. 60.

In general, claims of ineffective assistance of counsel are evaluated based on the two-part test promulgated in *Strickland* v. *Washington* (1984), 466 U.S. 668. The *Strickland* test requires a defendant to demonstrate defense counsel made professionally unreasonable errors and, furthermore, such errors prejudiced the defendant. Specifically, *Strickland* sets forth the following test: first, "the defendant must show that counsel's representation fell below an objective standard of reasonableness"; second,

the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, supra,* at 688, 694.

In *Holloway* v. *Arkansas* (1978), 435 U.S. 475, the court described the difficulty of demonstrating the second element of the *Strickland* test, prejudice, in a conflict-of-interest claim. In this regard *Holloway* states as follows:

"[I]n a case of joint representation of conflicting interests the evil * * * is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process." (Emphasis *sic*.) *Holloway, supra,* at 490.

The court concluded defense counsel's inaction would make the element of prejudice "difficult to judge." *Id.* at 491.

The difficulty of demonstrating prejudice in a Sixth Amendment claim has resulted in a refinement of the two-part *Strickland* test. A defendant who raised no objection of multiple representation at trial need not demonstrate prejudice on appeal; such element is presumed if the defendant satisfied the following twofold standard:

(1) The defendant must demonstrate defense counsel " 'actively represented conflicting interests' " and

(2) The defendant must demonstrate the " 'actual conflict of interest adversely affected his lawyer's performance.' " *Burger* v. *Kemp* (1987), 483 U.S. 776, 783; *Strickland, supra,* at 692; *Cuyler* v. *Sullivan* (1980), 446 U.S. 335, 350, 348[1]; *Glasser, supra,* at 72-75; *State* v. *McKinney* (May 7,

---

[1] In this regard *Cuyler* states the two-part test for conflict-of-interest claims as follows:

"Thus, a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. [Citation omitted.] But *until a defendant shows that his counsel actively represented conflicting interests, he has not*

1987), Cuyahoga App. No. 52095, unreported, at 7.

In the case *sub judice* the record fails to reveal any dual representation on behalf of Lynn W. Leary, defendant's counsel.

Defendant attempts to satisfy this initial prerequisite by claiming Leary jointly represented co-indictee Skube and defendant. A review of the record's papers negates this claim.[2] Specifically, the signature bloc of the papers in the trial court file affirmatively demonstrates Leary is counsel for only defendant Haberek. Thomas Kelly was Skube's original counsel and is designated on the court's papers as counsel for only Skube. the record reveals Kelly subsequently withdrew as counsel and was replaced by James Burke and James Gallagher. Moreover, the record fails to reveal any association between Kelly and Leary or Burke, Gallagher and Leary.[3]

In addition to defendant's failure to demonstrate Leary "actively represented" Skube and defendant, the record also fails to reveal any real conflict between Skube's position and defendant's position. Skube and defendant both testified at the time they committed the crime they did not think they were violating the law. In this regard Skube testified on cross-examination as follows:

"Q. [Defense Counsel] Before October 3rd, 1985, did anybody tell you or were you aware that it was a crime for you to give that information out?

"A. [Skube] No.

"Q. Did you have any idea in your mind that you were committing a crime if you gave that information to anybody other than court personnel?

"A. No.

"Q. If you had known it was a crime, would you have given it out?

"A. No."

Defendant Haberek, on direct examination, also testified he was unaware he was committing a crime:

"Q. [Defense Counsel] Mr. Haberek, did you think that you were committing a crime in requesting this information?

"A. [Defendant] No, I definitely did not think so. Obviously, at the risk of being what I have just been through, I obviously did not knowingly think it was a crime. I had risked too many things. As most people know, to run a campaign against a 16-year incumbent, I had done many things in regards to mortgaging my house and taking my money out of PERS to run a campaign that strong against a 16-year incumbent.

"I would have to say that I would not risk that money and that position to take that type of chance.

---

*established the constitutional predicate for his claim of ineffective assistance."* (Emphasis added.) *Id.* at 349-350.

[2] The record's papers unequivocally reveal the extent of Leary's representation was confined to defendant Haberek. The transcript, however, is unclear. Due to the obfuscatory nature of the record, the twofold *Burger* standard will be addressed in its entirety.

[3] In this regard Kelly, for example, is designated as counsel for only Skube. Kelly is further designated as a named partner at an address in one municipality whereas Leary's designation on the court's papers reveals he is a sole practitioner whose office is located in a different municipality. There is no reason apparent from the face of the record to infer an association between Kelly and Leary or Kelly's office and Leary's office. Nor is there any reason to infer any association between Burke, Gallagher and Leary. Other than an unsubstantiated statement made by Skube at a preliminary hearing that Leary represented her, there is nothing in the file to support this contention.

"Q. Did you at any time think that you were doing anything wrong by requesting that information from those people at the Parma court?

"A. No. Nobody had ever denied me that motor vehicle report. They could have always said, 'Jim, we are not allowed to do this.' And I would have said, 'Fine, that's no problem.' And I would not have asked them again. But I had asked them and they said, 'Fine.'

"Q. No one denied you that?

"A. No, not anyone.

"Q. I am more interested in what you thought. Did you think there was anything wrong when you asked for it?

"A. No."

In addition to defendant's failure to demonstrate Leary "actively represented conflicting interests," defendant also has failed to demonstrate how the claimed actual conflict of interest "adversely affected his lawyer's performance."

Defendant proposes an adverse effect on Leary's performance is demonstrated in the following manner:

"[H]e [Leary] made no effort to impeach her [Skube's] testimony by either [1] the time honored technique of exploring the 'deal' she made with the prosecution, or [2] by confronting her with her prior inconsistent statements which the prosecutor had previously characterized as wholly exculpatory of not only herself, but also Haberek."

The nature and content of the plea bargain was set forth on the record when Skube's plea was accepted by the court. The exculpatory statements of Skube and defendant were elicited by Leary during his cross-examination of Skube and his direct examination of defendant, *supra*.

Defendant was provided his Sixth Amendment right to conflict-free assistance of counsel.

The second component of defendant's Sixth Amendment claim contends he was denied counsel of his choice.

The court set the trial date of February 23, 1987 on December 18, 1986. Despite this notice in excess of two months defendant waited until February 20, 1987 to notify the court of his intention to substitute counsel. On February 23, 1987, prior to the commencement of trial, defense counsel formally requested substitution of counsel.[4] The record reveals the counsel sought by defendant requested a two- to three-week continuance to prepare for trial. The trial court denied defendant's motion to substitute.

The defendant claims the trial court's action contravened his Sixth Amendment right to counsel of his choice although Leary was retained and new counsel also would have been retained. In State v. Marinchek (1983), 9 Ohio App. 3d 22, 9 OBR 23, 457 N.E. 2d 1198, a case dealing with retained and not appointed counsel, the court described the breadth of an accused's Sixth Amendment right to counsel:

---

[4] Defendant claims in his appellate brief "the request [to substitute counsel] was initiated on the very day Haberek was convicted and sentenced to six months incarceration in Case No. 208389."

A review of the record reveals Leary indicated to the trial court defendant told Leary "it would be in his [defendant's] best interest if he obtained new counsel to represent him in the upcoming case." The record reveals Leary did not provide a date as to when defendant made the request. The only time frame provided by Leary concerning the request was prior to the final pretrial in the case *sub judice* which was February 20, 1987.

Regardless of the exact date on which defendant notified Leary of his *intention* to seek new counsel the fact remains defendant, through counsel, waited until the day of trial before presenting in court a motion to substitute counsel.

"The right to counsel guaranteed by the Sixth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution does not always mean counsel of one's own choosing. The right to counsel must be tempered by the public's right to a prompt, orderly and efficient administration of justice. Attorneys cannot be shed at every stage of the proceeding so as to impede that orderly administration. On the other hand, there is a right to discharge counsel because of the personal nature of the services being performed. Thus, it is the trial court's duty to balance the defendant's right to counsel of his preferential choosing against the public interest in the administration of justice." *Id.* at 23-24, 9 OBR at 25, 457 N.E. 2d at 1200.

A review of the cases in this area reveals the courts tip the balance in favor of the defendant when there existed a total lack of cooperation and trust between counsel and defendant. *State* v. *Dukes* (1986), 34 Ohio App. 3d 263, 518 N.E. 2d 28; *State* v. *Pruitt* (1984), 18 Ohio App. 3d 50, 18 OBR 163, 480 N.E. 2d 499. Conversely, the balance is tipped in favor of the orderly and efficient administration of justice when defendant's request for new counsel is for purposes of delay or made in bad faith. *Dukes; Pruitt.*

The record in the case *sub judice* fails to reveal any lack of cooperation, trust, or communication between defense counsel and defendant serving to impair the attorney-client relationship. In addition to the fact a motion to substitute counsel made on the day of trial, when such date was set in excess of two months prior to the date of trial, intimates such motion is made in bad faith for the purposes of delay, in denying defendant's request to substitute counsel, the trial court suggested an improper motive served as an impetus for the request.

The trial court acted within the bounds of its discretion in denying defendant's motion to substitute. Defendant was afforded his Sixth Amendment right to counsel.

Lastly, defendant claims Leary's failure to move for suppression of evidence demonstrates defendant was denied his Sixth Amendment right to effective assistance of counsel. Defendant contends suppression of the envelope was critical since the "entire case came into being as a result of an unlawful search performed by Parma Municipal Court Clerk Walter Shipka." Defendant postulates a motion to suppress the evidence seized by Shipka "would have, in all probability, aborted the entire prosecution."

Defendant contends on appeal the basis for the motion to suppress was twofold: (1) Skube and defendant possessed a legitimate expectation of privacy in the envelope and (2) the search was an impermissible warrantless search.

An inquiry into the latter component of defendant's contention necessitates an analysis into whether Shipka's actions constituted state action. The Fourth Amendment proscribes only official government action; it does not limit private conduct. The Fourth Amendment does not require suppression of evidence when it is obtained by private persons. *Burdeau* v. *McDowell* (1921), 256 U.S. 465; *State* v. *Henry* (1981), 1 Ohio App. 3d 126, 1 OBR 432, 439 N.E. 2d 941.

It is unnecessary, however, to address the issue of whether Shipka's actions constituted state action regulated by the Fourth Amendment since the absence of a legitimate expectation of privacy on behalf of Skube and defendant as to the letter compels the conclusion there was no search within the meaning of the Fourth Amendment.

In *Katz* v. *United States* (1967), 389 U.S. 347, the court promulgated

the following principle describing the situations in which a person's right of privacy was protected by the Fourth Amendment:

"For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. * * * But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Id.* at 351-352.

Defendant duly notes this seminal case in his brief, however, fails to recognize the subsequent judicial authority which has resulted in a narrowing of the privacy protection enunciated in *Katz*.

In *Smith* v. *Maryland* (1979), 442 U.S. 735, the court indicated a shift from the previous standard of "reasonable" expectation of privacy to a "legitimate" expectation of privacy. In this regard the court adopted in its majority opinion the following test initially set forth in Justice Harlan's concurrence in *Katz* for determining whether the object of the search is private so as to necessitate Fourth Amendment protection:

(1) Whether the individual possessed an " 'actual (subjective) expectation of privacy' ";

(2) If the individual possessed an actual expectation of privacy, then is such expectation a "legitimate" one which society is prepared to recognize. *Smith, supra,* at 740, 744.

In the case *sub judice* neither Skube nor defendant harbored any expectation of privacy in the envelope and its contents. The envelope was sealed and on the front of the envelope was inscribed the name "Jim." The return address on the envelope set forth the clerk of court's address and the name "Walter Shipka," the Clerk of Parma Municipal Court. Surely Shipka, as clerk of court, possessed the right and perhaps the duty to inspect the contents of an envelope inscribed with his return address. Shipka, as the clerk of court, was ultimately responsible for the conduct of his employees and performance of that office. In accordance with that responsibility Skube and defendant could not expect the contents of the envelope to be private.

In addition, if Skube and defendant did possess some subjective expectation of privacy in the envelope and its contents, this expectation is not a "legitimate" one which society is prepared to recognize as reasonable. *Smith, supra,* at 743.

In *Smith* the court cited the case of *United States* v. *Miller* (1976), 425 U.S. 435, for the proposition an individual has no legitimate expectation of privacy when he reveals information to a third party on the assumption it will be used for only a limited purpose and the third party betrays such confidence and conveys the information to the government.

In *Smith* the court stated the individual "assumed the risk" of disclosure; such individual possessed no "legitimate 'expectation of privacy' " in the information conveyed. *Id.* at 744.

In the case *sub judice*, regardless of Skube's subjective expectation, when she placed the LEADS reports in the envelope bearing the name of Walter Shipka as Clerk of the Parma Municipal Court, she similarly "assumed the risk" the contents of the envelope would not remain private. She possessed no legitimate expectation of privacy in the envelope. *Smith.*

The foregoing analysis reveals there existed no basis for a motion to suppress. Without addressing the nature of the conduct, it is clear Skube and defendant possessed no expectation of privacy in the envelope and its contents. Consequently, such envelope

was not entitled to Fourth Amendment protection.

Defendant was afforded his Sixth Amendment right to effective assistance of counsel.

Defendant's second assignment of error follows:

"The trial court lacked subject-matter jurisdiction over count one of the indictment, because the indictment failed to charge all the elements of the offense and failed to afford the defendant adequate notice of the charge against him."

This assignment of error is without merit.

Defendant contends the trial court lacked subject-matter jurisdiction as to the theft in office charge, R.C. 2921.41. Defendant maintains since the claimed defect in the indictment is jurisdictional, his failure to raise this matter in the trial court does not constitute waiver. The claimed defect alleged by defendant is the indictment did not specify "which 'theft offense' described by Ohio Revised Code Section 2913.01[5] he was being charged with. * * *" (Footnote added.) Defendant concludes since the indictment did not specify which theft offense, the court lacked subject-matter jurisdiction to adjudicate the charge of theft in office.

In support of this contention defendant cites State v. Headley (1983), 6 Ohio St. 3d 475, 6 OBR 526, 453 N.E. 2d 716, and State v. Wohlever (1985), 27 Ohio App. 3d 192, 27 OBR 231, 500 N.E. 2d 318. A detailed analysis of these cases is unnecessary since a cursory review reveals they are readily distinguishable. Headley and Wohlever dealt with indictments which were defective due to the absence of an essential element of the crime. Conse-

quently, the courts in both cases concluded the indictment failed to state a crime since it omitted an essential element of the crime.

In the case sub judice it is uncontroverted the indictment set forth all the essential elements of R.C. 2921.41. There exists no error of omission as present in Headley and Wohlever. Defendant's claim is not a jurisdictional argument in which he argues the indictment failed in some essential manner; defendant's contention is the indictment was vague and overbroad and, therefore, failed to provide him notice of the charge. Defendant has waived the right to raise this issue on appeal since he failed to address this claimed error in the indictment in the trial court. State v. Ervin (June 11, 1987), Cuyahoga App. No. 52357, unreported; State v. Dumas (Apr. 10, 1986), Cuyahoga App. Nos. 50216 and 50717, unreported.

In addition, per his request, defendant was provided with a bill of particulars. Crim. R. 7(E). Ambiguity, if any, in the indictment which was not cured by the bill of particulars should have been brought to the attention of the court. Since defendant made no such request or motion it is presumed he possessed sufficient notice of the charges; any error in this regard is waived. Crim. R. 12(G).

Defendant's third assignment of error follows:

"The evidence proved no violation of the theft in office statute (R.C. 2921.41)."

This assignment of error is without merit.

Defendant does not contest there exists sufficient evidence he aided and abetted[6] a public official in the commission of a theft offense; rather, he

---

[5] R.C. 2921.41, theft in office, refers to R.C. 2913.01(K) for the definition of "theft offense."

[6] R.C. 2923.03(A)(2) states in part as follows:

"(A) No person, acting with the kind

claims the value of the services stolen was minimal and, therefore, not cognizable under R.C. 2921.41.[7] In this regard defendant cites *State* v. *Blagajevic* (1985), 21 Ohio App. 3d 297, 21 OBR 443, 488 N.E. 2d 495. *Blagajevic* involved a CETA[8] participant. Blagajevic, working as a janitor in the Parma Police Department, removed several items from the property storage garage of the Parma police station. Due to the removal of these items Blagajevic was convicted of theft in office, R.C. 2921.41. On appeal the court held Blagajevic was not a public official within the meaning of R.C. 2921.41 and on this basis vacated his conviction. Conversely, in the case *sub judice,* it is uncontroverted Skube was acting as a public official when she procured the information requested by defendant. The *obiter dictum* in *Blagajevic* suggested the theft in office statute should not apply to public employees who remove "a pencil or rubber band." *Blagajevic, supra,* at 299, 21 OBR at 445, 488 N.E. 2d at 498. In this regard the court revealed such a result was beyond the scope of R.C. 2921.41, a statute the court believed "is aimed at those persons who hold positions of authority and/or public trust." *Id.*

It is self-evident the computer data for which the city of Parma paid $12,000 per year to receive is not analogous to "a pencil or rubber band." In addition, the dictum in *Blagajevic* on which defendant relies states the theft in office statute "is aimed at those persons who hold positions of authority and/or public trust." *Id.* Skube, as a LEADS supervisor, attended classes where she was exposed to information stressing the confidential nature of the LEADS system. As a clerk she was entrusted to maintain the confidential nature of the information contained in the LEADS system. Skube breached this public trust by providing defendant with the LEADS information. Even the dicta on which defendant relies unequivocally states this breach of the public trust is one of the situations the legislature intended to address when it enacted R.C. 2921.41.

There exists sufficient evidence to support defendant's conviction under R.C. 2921.41. *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 9 O.O. 3d 401, 381 N.E. 2d 184.

Defendant's fourth assignment of error follows:

"There is no evidence in the record to sustain the trial court's finding that appellant Haberek aided and abetted the possession of criminal tools."

This assignment of error is without merit.

Defendant contends there is insufficient evidence of the requisite culpability necessary to sustain his con-

---

of culpability required for the commission of an offense, shall do any of the following:

"* * *

"(2) Aid or abet another in committing the offense[.]"

[7] R.C. 2921.41 states in part as follows:

"(A) No public official or party official shall commit any theft offense, as defined in division (K) of section 2913.01 of the Revised Code, when either of the following applies:

"(1) The offender uses his office in aid of committing the offense, or permits or assents to its use in aid of committing the offense;

"(2) The property or service involved is owned by this or any other state or the United States, a county, municipal corporation, or township, or any political subdivision, department, or agency of any of them, or is owned by a political party, or is part of a political campaign fund."

[8] CETA refers to "Comprehensive Employment and Training Act."

viction of aiding and abetting Skube in her possession of the criminal tools, *viz.*, a computer terminal, a computer printer and a clerk of court's envelope. A short restatement of the facts reveals on October 2, 1985 defendant twice contacted Skube by telephone and on each occasion requested LEADS information on certain individuals. Skube obtained the information from the LEADS computer terminal, printed the information and enclosed it in the clerk of court's envelope.

It is unnecessary to prove defendant possessed the requisite culpability for the commission of R.C. 2923.24, *i.e.*, that he was actually aware Skube possessed the terminal since defendant could have reasonably contemplated the principal would possess the computer terminal in committing the theft offense; this is so regardless of defendant's knowledge or assent to Skube's possession of those items. In this regard the court in *State* v. *Elkins* (May 7, 1981), Cuyahoga App. No. 42933, unreported, stated as follows at 5:

"When there is sufficient evidence of a common design or purpose to commit an offense, each one engaged in the common design will be bound by the consequences naturally or probably arising in furtherance of that criminal offense." See, also, *State* v. *Lockett* (1976), 49 Ohio St. 2d 48, 58-62, 3 O.O. 3d 27, 33-36, 358 N.E. 2d 1062, 1070-1072.

In *Elkins,* the defendant was convicted of aggravated burglary, R.C. 2911.11, as an aider and abettor. The evidence established defendant and the principal entered an occupied dwelling with the purpose to commit a theft offense. Upon being apprehended a handgun was discovered on the principal. On appeal the defendant argued the state presented insufficient evidence necessary to convict him of ag-

gravated burglary since he was not actually aware the principal possessed a handgun during the commission of the crime. The court rejected this contention and in so doing stated as follows:

"There was presented sufficient evidence of a common design to commit a burglary and so the jury could properly find the defendant equally guilty of any criminal offense that the juvenile might have committed in furtherance of that burglary. *Since the defendant could have reasonably contemplated that the juvenile (principal) might possess a gun during the commission of the burglary, the jury could properly find that the defendant was equally guilty of the aggravated burglary, R.C. 2911.11(A)(2), regardless of the defendant's knowledge or assent to the juvenile's possession of the deadly weapon."* (Emphasis added.) *Elkins, supra,* at 6.

In the case *sub judice* there exists sufficient evidence of a common design or purpose to commit a theft offense. Specifically, it is uncontroverted defendant twice contacted Skube on October 2, 1985 for the purpose of procuring the LEADS information on the prospective insureds. Since the use of the terminal was the sole means by which this information is obtained, there is little difficulty in reaching the conclusion defendant could have reasonably contemplated Skube might possess the terminal in the commission of the theft offense regardless of his actual knowledge of her possession of this item.

Use of the printer and envelope, however, was not an act within the reasonable contemplation of the defendant. The record revealed Skube provided defendant with the LEADS information when he contacted her by telephone. There is no evidence in the record defendant requested a hard copy of this information. There was no reason for defendant to believe Skube

would store this information since the purpose of the two telephone calls, *viz.*, to obtain LEADS reports, was accomplished during both conversations. The absence of a reasonable contemplation on behalf of defendant relative to the printer and envelope during the commission of the theft offense leaves the conviction and its penalty unchanged. The remaining criminal tool, the terminal, provides the necessary basis for the conviction and its penalty. R.C. 2923.24.

There existed sufficient evidence, exclusive of the envelope and printer, to submit the criminal tools charge to the trier of fact and, if believed, to sustain the conviction beyond a reasonable doubt.

Defendant's fifth and final assignment of error follows:

"Ohio Revised Code Section 2923.24 is unconstitutional as applied in this case."

This assignment of error is without merit.

Defendant failed to raise this issue in the trial court. Failure to raise an issue at the trial court level constitutes waiver of the claimed error on appeal. *Kalish* v. *Trans World Airlines* (1977), 50 Ohio St. 2d 73, 4 O.O. 3d 195, 362 N.E. 2d 994; *State* v. *Oliver* (1987), 31 Ohio App. 3d 100, 31 OBR 171, 508 N.E. 2d 1048.[9]

Appellate Rules 12(A) and 16(A)(4) serve as alternative grounds for overruling this assignment of error. "At a

---

[9] Defendant claims the intervening decision of *State* v. *McDonald* (1987), 31 Ohio St. 3d 47, 31 OBR 155, 509 N.E. 2d 57, preserved his error for review despite his failure to raise this issue in the trial court. *McDonald* upheld the constitutionality of R.C. 2923.24 and, therefore, it is difficult to grasp the import of defendant's contention. The status of *McDonald*, assuming defense counsel was aware of the decision, in no way impaired his duty to address the constitutional argument in the lower court.

minimum, where a statute is argued to be unconstitutional, the party must cite which section of the Constitution he contends is in conflict with the statute, and he must state his reasons for his conclusion that the statute is unconstitutional." *Foster* v. *Bd. of Elections* (1977), 53 Ohio App. 2d 213, 7 O.O. 3d 282, 373 N.E. 2d 1274, paragraph six of the syllabus. Defendant's failure to cite a constitutional section coupled with his "argument" which primarily consists of the incorporation by reference of the dissent in *McDonald* does not discharge his burden under App. R. 12(A) and 16(A)(4).

*Judgment affirmed.*

ANN MCMANAMON, J., concurs.

PRYATEL, P.J., concurs in part and dissents in part.

PRYATEL, P.J., concurring in part and dissenting in part. I would affirm the conviction on count 1 (theft in office) and discharge the defendant on count 2 (possession of criminal tools).