DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Raymond Graves appeals the jury verdict in the Lorain County Court of Common Pleas, which found him guilty of assault. We affirm.
 I.
On August 8, 1996, Graves was an inmate at the Grafton Correctional Institute, serving a sentence imposed pursuant to his 1985 conviction for four counts of rape and four counts of gross sexual imposition. A prison official informed Graves that a new roommate was going to be assigned to his cell, as soon as his current roommate was released from prison. Graves objected to the assignment, alleging that there had been a history of conflict between Graves and the individual assigned to room with him. When Connie Cook, the manager of Graves' residential unit, informed Graves that no change could be made to the roommate assignment, Graves became upset. Graves began threatening that there would be problems with this roommate if the assignment did not change. Graves also verbally abused Cook. Both Cook and Sergeant Richard Lincoln advised Graves to calm down, but Graves, still very upset, left the room. Lincoln followed Graves and gave him a direct order to stop, but Graves proceeded on.
Lincoln followed Graves, as did another officer, Sergeant Juanita Shinsky. Lincoln pursued in an effort to handcuff Graves, as he believed that Graves was prepared to encounter the new roommate. After a chase through the prison yard, Lincoln got within arm's length of Graves. He put one hand on Graves to slow him down and then cuff him. Lincoln and other witnesses later testified that Graves stopped, pivoted on one foot, turned toward Lincoln, and punched him in the face. Lincoln's eyeglasses flew off, and he suffered a laceration on his face, near his nose. Graves turned again and ran, until an assisting officer stopped him.
On January 29, 1997, the Lorain County Grand Jury indicted Graves for assault, a fifth degree felony in violation of R.C.2903.13(A). Because Graves was indigent, the trial court assigned counsel to represent Graves. However, Graves became dissatisfied with the performance of this counsel, and counsel was permitted to withdraw from representation because of the attorney-client problems with Graves. At some point in May or June, 1997, the trial court appointed new counsel for Graves. After several continuances, a jury trial commenced on January 14, 1998. Before the jury was impaneled, defense counsel R. J. Budway advised the judge that Graves was dissatisfied with his work and that Graves had told him he had filed a grievance against him. Under the circumstances, Budway asked permission to withdraw from representation. Graves then advised the judge that he was dissatisfied with Budway's performance because Budway failed to file certain subpoenas and motions with the court. One such motion was for an expert witness. Graves' first attorney had already filed that motion, and the court had already denied it.
The judge permitted a recess for Budway to determine whether Graves had filed a grievance, and Budway discovered that he had not. The judge refused to appoint new counsel for Graves, and advised him that he could proceed with present counsel, or represent himself. Graves repeatedly asserted that he did not want Budway to represent him, because he believed Budway was not prepared for trial and would not provide a vigorous defense. After advising Graves against the option of defending the case prose, the court again gave him the choice of working with Budway or proceeding pro se. Graves registered his objection to proceeding to trial, but chose the option of defending himself pro se. The court then directed Budway to remain as standby counsel throughout the trial, to assist Graves in any manner Graves sought, and to be prepared to act as defense counsel should Graves reconsider his choice. With this arrangement, the trial proceeded.
The State produced several witnesses to the assault, all of whom said they saw Graves swing at Lincoln, causing the laceration to his face. Graves cross-examined the witnesses. He then testified in his own defense. Graves testified that he accidentally knocked Lincoln's glasses from his face, when Lincoln attempted to handcuff him. He denied striking Lincoln in the face and causing the laceration. The jury returned a guilty verdict and Graves was sentenced to eleven months' imprisonment, to be served consecutive to his existing sentence.
Graves filed the instant appeal, asserting as error that (1) the jury verdict was against the manifest weight of the evidence and (2) the trial court erred when it failed to appoint new counsel, in violation of Crim.R. 44.[1]
 II. Assignment of Error II
THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT FAILED TO APPOINT NEW COUNSEL FOR APPELLANT IN VIOLATION OF OHIO CRIMINAL RULE 44.
The Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a criminal defendant has a constitutional right to assistance of counsel at all stages of a criminal prosecution, and a right to court-appointed counsel if he is unable to retain counsel. See State v. Gibson (1976), 45 Ohio St.2d 366, syllabus; and Crim.R. 44. In Ohio, the Rules of Criminal Procedure outline the duty of the trial court to ensure that a defendant's constitutional right to counsel or to knowing self-representation is honored. Crim.R. 44 requires that when a defendant is charged with a serious crime and he is unable to obtain counsel,
 counsel shall be assigned to represent him at every stage of the proceedings from his initial appearance before a court through appeal as of right, unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel.
Crim.R. 44(A).
In the instant case, the trial court appointed counsel for Graves. Despite the fact that the first attorney had actively represented Graves and filed defense motions at Graves' request, that attorney was allowed to withdraw at Graves' request, due to problems in the attorney-client relationship. The trial court appointed a second counsel, Mr. Budway, to represent Graves. Budway also actively represented Graves for over six months prior to trial. However, on the day the trial was scheduled to begin, Graves advised the court that he did not want Budway to represent him.
The trial court inquired about Graves' dissatisfaction with his current counsel. The crux of the issue was that Budway had failed to file a motion for an expert witness; this motion duplicated one the trial court had already denied. The court advised Graves that it would not reconsider its denial of the request for the expert witness, regardless of who represented Graves. Graves also alleged that Budway had advised him that he had no defense. Budway denied this, stating that he had just conferred with Graves about defense strategies. Nonetheless, Graves insisted that he did not want Budway to represent him, because "my lawyer's not prepared to go to trial."
Graves now asserts that the trial court erred in failing to assign yet a third attorney to represent him. "The right to have counsel assigned by the court does not impose a duty on the court to allow the accused to choose his own counsel; the selection is within the discretion of the court." Thurston v. Maxwell (1965),3 Ohio St.2d 92, 93, citing 23 Corpus Juris Secundum 962, Criminal Law, Section 982(5). See, also, State v. Edsell (1996),113 Ohio App.3d 337, 340. "[A]n indigent defendant is entitled to the appointment of substitute counsel only upon a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result." State v. Blankenship
(1995), 102 Ohio App.3d 534, 558, citing State v. Pruitt
(1984), 18 Ohio App.3d 50, 57.
Furthermore, a trial court may appropriately assess whether defendant's motion to substitute counsel was made in bad faith. "[A] motion to substitute counsel made on the day of trial, when such date was set in excess of two months prior to the date of trial, intimates such motion is made in bad faith for the purposes of delay * * *. The trial court [acts] within the bounds of its discretion in denying [such a] motion to substitute." State v.Haberek (1988), 47 Ohio App.3d 35, 41. The record below reveals that the date for trial was set almost two months beforehand, yet Graves did not register his objection to Budway's representation until the day of trial.
Where, as here, the defendant makes a last-minute motion for substitute counsel and cannot articulate a legitimate reason why the trial court should replace his appointed counsel, the trial court's refusal to appoint new counsel does not constitute an abuse of discretion. See Edsell, 113 Ohio App.3d at 341-342.
Graves' second assignment of error is overruled.
 III. Assignment of Error I
THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In reviewing a conviction which a defendant argues is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. "This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant." State v. Ali (Apr. 28, 1999), Summit App. No. 19119, unreported, at 9, citing Otten, 33 Ohio App.3d at 340.
The prosecution was required to prove beyond a reasonable doubt that Graves had "knowingly cause[d] or attempt[ed] to cause physical harm" to Sergeant Lincoln. R.C. 2903.13(A). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).
The evidence below consisted of the testimony of four employees of Grafton Correctional Institute and testimony by Graves. These employees testified that a discussion about the roommate issue took place in Cook's office. They each testified that Graves fled from the office despite Lincoln's direct order to stop. The witnesses stated that after Lincoln pursued Graves for some distance through the prison yard, he finally got close enough to the prisoner to put his hand on Graves' shoulder. Three witnesses testified that Graves turned and struck Lincoln in the face, knocking off his glasses and causing him injury. One witness testified that she saw Graves swing at Lincoln, but because of the angle of her view, she could not testify that Graves actually struck Lincoln.
Graves admitted that he was upset over the roommate issue, that he left the office despite being ordered by Lincoln to stop, and that he proceeded to flee. Graves testified that when Lincoln finally caught up to him, the officer grabbed him below the elbow. Graves testified that Lincoln then spun Graves around, and that Lincoln was ready to spray him with mace. Graves said that he then pulled his arm away from Lincoln's grasp, and in doing so his finger accidentally caught Lincoln's glasses, knocking them to the ground. Graves testified that he did not strike Lincoln in the face, either intentionally or unintentionally. Graves argued to the jury that if he had hit Lincoln straight on, he would not have sent the glasses flying, but would have pushed them further into his face. Graves further asserted that the witnesses lied, that they had compared stories, and that they were all out to get him.
Admitted at trial, but missing from the record on review, was a photograph, taken immediately after the incident, showing injury to Lincoln's face. The prosecution's witnesses identified a mark to the left side of Lincoln's nose, which they said was blood. Graves also testified about the photograph. He admitted seeing the red mark on Lincoln's face, but could not say that the mark was blood.
We find that there was sufficient evidence before the jury to allow it to find beyond a reasonable doubt that Graves caused physical harm to Lincoln, R.C. 2902.13(A), with an awareness that "his conduct [would] probably cause a certain result or [would] be of a certain nature[,]" R.C. 2901.22(B). We cannot say that in rendering its verdict the jury clearly lost its way. Thus, we overrule Graves' first assignment of error.
Having overruled Graves' assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
 KK The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 WILLIAM R. BAIRD FOR THE COURT SLABY, J.
BATCHELDER, J.
CONCUR
[1] We have rearranged the assignments of error for ease of discussion.