OPINION
{¶ 1} This matter comes for consideration upon the record in the trial court and the parties' briefs. Appellant, Robert Flesher, appeals the decision of the Monroe County Court of Common Pleas convicting him of two counts of assault upon a police officer, felonies of the fourth degree, in violation of R.C. 2903.13. With this appeal, Flesher raises several issues for this court's review, including that he should not have been allowed to represent himself without a full inquiry into whether he knowingly and intelligently waived his right to counsel. Because this assignment of error is meritorious, the judgment of the trial court is reversed, Flesher's convictions are vacated and this case is remanded for further proceedings.
 Facts {¶ 2} On November 4, 2005, Deputies Eric Yonley and Mark Hayes attempted to serve Flesher with an arrest warrant and a protective order from unrelated cases. The judge that issued the arrest warrant left specific instructions that the warrant was not to be served on Flesher at his residence.
 {¶ 3} When the deputies arrived at the residence, Flesher was on his porch. Flesher remained calm until the deputies mentioned the arrest warrant. Flesher rushed into his residence and slammed the front door on the deputies who were in pursuit. Officer Yonley was not injured but Officer Hayes suffered a bruised wrist and a bruised leg. Once they were inside the home, Flesher struggled with the two officers, which resulted in an altercation on the living room sofa that ended with the officers restraining Flesher's arms and legs.
 {¶ 4} As a result of this incident, Flesher was indicted on two counts of assault upon a police officer, felonies of the fourth degree, in violation of R.C. 2903.13. The court ordered that Flesher submit to a competency evaluation. The psychologist who conducted the evaluation diagnosed Flesher with paranoid schizophrenia and schizotypal personal disorder.
 {¶ 5} On the day of trial, Flesher was represented by counsel. However, after opening arguments, Flesher began to complain about his attorney. The trial court excused the jury and told Flesher that he had the choice of accepting his appointed *Page 2 
attorney or representing himself. Flesher chose to represent himself for the remainder of the trial. At the end of the trial, the jury found Flesher guilty of both counts.
 Competency Evaluation {¶ 6} As his first assignment of error, Flesher claims:
 {¶ 7} "The trial court erred when it did not order a second evaluation of Appellant's competency."
 {¶ 8} Since the trial court "may order one or more evaluations" of a defendant's mental condition, the number of evaluations to be conducted is left to the sound discretion of the trial court. See State v.Hix (1988), 38 Ohio St.3d 129, 131. Thus, we review a trial court's decision to grant one or more evaluations of a defendant's mental condition for abuse of discretion. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 9} The competency of a defendant is presumed. The presumption is rebutted only when a preponderance of the evidence shows that due to his present mental condition, the defendant was unable to understand the nature of the proceedings against him and could not assist in his defense. R.C. 2945.37(G); State v. Swift (1993), 86 Ohio App.3d 407,411, 621 N.E.2d 513. "A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." State v. Bock (1986), 28 Ohio St.3d 108,110, 502 N.E.2d 1016. Therefore, a defendant's emotional or mental instability alone does not establish incompetence.
 {¶ 10} Here, the psychologist who completed the competency evaluation of Flesher determined that:
 {¶ 11} "[T]he defendant suffers from a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life. Mr. Flesher is diagnosed with Schizophrenia, Paranoid type. He also has a history of substance abuse which is in remission in the present environment. Mr. Flesher also has personality traits suggestive *Page 3 
of antisocial and schizotypal personality disorders.
 {¶ 12} "Mr. Flesher is charged with two counts of Assault. The defendant was evaluated with respect to his ability to understand his current charges and his ability to work with his attorney in his defense. He was very paranoid about authority figures being against him but he does have the cognitive ability to understand his charges and assist his defense."
 {¶ 13} Given the fact that a full competency evaluation had already been completed by a court appointed psychologist, the trial court did not abuse its discretion by failing to order a second evaluation. Thus, this assignment of error is meritless.
 Substitution of Counsel {¶ 14} Flesher's second assignment claims:
 {¶ 15} "The trial court erred when it overruled Appellant's motion to substitute counsel."
 {¶ 16} An indigent defendant is not entitled to the counsel of his choosing, but rather, only the right to competent, effective representation. See State v. Murphy (2001), 91 Ohio St.3d 516, 523,747 N.E.2d 765; State v. Cowans (1999), 87 Ohio St.3d 68, 72,717 N.E.2d 298; Thurston v. Maxwell (1965), 3 Ohio St.2d 92, 93, 209 N.E.2d 204. The right to counsel does not guarantee the defendant a meaningful relationship with counsel. See Morris v. Slappy (1983), 461 U.S. 1,13-14, 103 S.Ct. 1610, 75 L.Ed.2d 610; State v. Pruitt (1984),18 Ohio App.3d 50, 57, 480 N.E.2d 499. In order for a criminal defendant to discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to the effective assistance of counsel. See State v. Coleman (1988), 37 Ohio St.3d 286, 525 N.E.2d 792, paragraph four of the syllabus.
 {¶ 17} Thus, an indigent defendant is entitled to new counsel "only upon a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result." State v. Edsall (1996),113 Ohio App.3d 337, 339, 680 N.E.2d 1256; see, also, State v. Blankenship *Page 4 
(1995), 102 Ohio App.3d 534, 558, 657 N.E.2d 559; Pruitt,18 Ohio App.3d at 57, 480 N.E.2d 499. Hostility, tension, or personal conflicts between an attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify a change in appointed counsel. See State v. Henness (1997), 79 Ohio St.3d 53,65-66, 679 N.E.2d 686. Furthermore, "[m]erely because appointed counsel's trial tactics or approach may vary from that which appellant views as prudent is not sufficient to warrant the substitution of counsel." State v. Glasure (1999), 132 Ohio App.3d 227, 239,724 N.E.2d 1165.
 {¶ 18} A defendant bears the burden of demonstrating that substitute counsel is warranted. State v. Carter (1998), 128 Ohio App.3d 419, 423,715 N.E.2d 223. Once an indigent defendant questions the adequacy of assigned counsel during trial, the court must inquire into the complaint on the record. Id; see, also State v. King (1995), 104 Ohio App.3d 434,437, 662 N.E.2d 389. Factors to consider in reviewing a defendant's request for substitute counsel include: "`the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.'" State v. Jones (2001), 91 Ohio St.3d 335, 342,744 N.E.2d 1163 (quoting United States v. Jennings (C.A.6, 1996), 83 F.3d 145,148). Additionally, when the timing of a request for new counsel is an issue, a trial court may consider whether the defendant's request for new counsel was made in bad faith. See State v. Haberek (1988),47 Ohio App.3d 35, 41, 546 N.E.2d 1361. A motion for new counsel made on the day of trial, "intimates such motion is made in bad faith for the purposes of delay." Id.
 {¶ 19} A trial court's decision regarding a request for substitute counsel is governed by an abuse of discretion standard. SeeMurphy, 91 Ohio St.3d at 523, 747 N.E.2d 765; Jones,91 Ohio St.3d at 343, 744 N.E.2d 1163; State v. Smith (Dec. 29, 1998), Lawrence App. No. 98CA12. Thus, an appellate court will not reverse the trial court's decision absent an abuse of discretion. Murphy. The term "abuse of discretion" implies that the court's decision was "unreasonable, arbitrary, or unconscionable." State *Page 5 v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144. Moreover, when applying the abuse of discretion standard, a reviewing court is not free merely to substitute its judgment for that of the trial court. SeeIn re Jane Doe 1 (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181.
 {¶ 20} In the present case, the following exchange took place:
 {¶ 21} The Court: "All right. Now, Mr. Flesher, I don't know what the problem is here, but you're represented by counsel.
 {¶ 22} "And during these trials, one or the other of you is going to speak. Now, Mr. Sickler is representing you.
 {¶ 23} "What is the problem, sir?"
 {¶ 24} Flesher: "I would like to declare an estoppel by representation."
 {¶ 25} The Court: "Do what?"
 {¶ 26} Flesher: "I wish to declare an estoppel by representation, in legal terminology."
 {¶ 27} The Court: "What is an estoppel by representation?"
 {¶ 28} Flesher: "In layman's terms, counsel has been detriment in ever increasing form to my case and circumstances from the initial and/or first encounter with —"
 {¶ 29} The Court: "All right. Now, just hold it right there.
 {¶ 30} "Are you having a problem with your attorney?"
 {¶ 31} Flesher: "Yes, sir."
 {¶ 32} The Court: "And what problem are you having?"
 {¶ 33} Flesher: "He doesn't address none of the matters-"
 {¶ 34} The Court: "Now, you understand that you're going to be representing yourself in this trial if you've got a problem with your attorney here that cannot be dealt with between the two of you.
 {¶ 35} "Now, I also want to explain something to you. That if you represent yourself in this trial, I'm going to have to hold you to the same standards as I hold anybody else in Court." *Page 6 
 {¶ 36} Flesher: "Yes, sir."
 {¶ 37} The Court: "I have to do that. I have to be fair to both sides.
 {¶ 38} "And I do not want to do anything that is going to prejudice you in the eyes of the jury, but I'm afraid you're going to prejudice yourself.
 {¶ 39} "Now, I don't know what the problem is here, but I think that what we need to do is give you a couple of minutes to discuss this with Mr. Sickler, and then we're going to go forward, because we've got this jury sworn, and we're going to continue this trial today whether you're represented by an attorney or not.
 {¶ 40} "Now I don't know what an estoppel by counsel is. I've never heard of such a thing.
 {¶ 41} "And I think maybe you are reading some old book there that has a lot of stuff in it that may or may not be right.
 {¶ 42} "So Mr. Sickler, I'm going to give you about two or three minutes to talk to your client and come back in here and explain to me what's going on.
 {¶ 43} "We're going to be off the record."
 {¶ 44} * * *
 {¶ 45} The Court: "All right. Where do we stand?"
 {¶ 46} Mr. Sickler: "I think he may have me as an advisor or something, but I think he wants to do his own defense, as far as I can tell."
 {¶ 47} The Court: "All right. All right. That's fine. He has that right.
 {¶ 48} "This is America."
 {¶ 49} Mr. Hampton: "We would ask that there be some inquiry — I'm not sure how to phrase it — but given the competence evaluation, it did indicate that he was able to understand the nature of the charges against him, and I don't mean to understand the nature of the charges against him, and I don't mean to indicate that he's not sufficiently competent to be his own attorney, but I think that there needs to be some inquiry. I mean, at least of Mr. Sickler, as to his level of competence.
 {¶ 50} "I know he doesn't have the competence of a trained attorney, but * * *" *Page 7 
 {¶ 51} The Court: "Well, he's not going to have the competence of a trained attorney, and it's his decision. I'm going to explain that to him here in a minute, but I've got to hold him to the same standards as I hold anybody else that comes to Court.
 {¶ 52} "And if he wants to represent himself, this is America and he's got the right to do it.
 {¶ 53} "So I'll let him represent himself, but I am not going to let him run away with this trial and control this trial. I am in control of this trial. He is not.
 {¶ 54} "And I want to make that understood. And I want to make it understood that when I tell him that he is out of order, that he best be sitting down or I'm going to have him removed. It's real simple. It's very simple.
 {¶ 55} "All right. And you think, Mr. Sickler, then that he wants to represent himself?
 {¶ 56} Mr. Sickler: "I believe that's what he wants to do."
 {¶ 57} The Court: "All right. Go back over there and have a seat. We'll put this on the record."
 {¶ 58} It is clear from the record that in addressing Flesher's complaints about counsel, the trial court did not consider substitution of counsel as a possibility. Rather, the trial court instead interpreted the complaints as a request from Flesher to represent himself. Thus, the actions of the trial court would be more appropriately addressed in the analysis of Flesher's next assignment of error.
 Waiver of Right to Counsel {¶ 59} Flesher's third assignment of error claims:
 {¶ 60} "The trial court erred when it permitted Appellant to proceed without counsel."
 {¶ 61} The Sixth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides criminal defendants with the fundamental right to counsel. SeeGideon v. Wainwright (1963), 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. A defendant, however, may waive this right where his waiver is *Page 8 
made knowingly, voluntarily, and intelligently. State v. Gibson (1976),45 Ohio St.2d 366, 377-378, 345 N.E.2d 399, citing Faretta v.California (1975), 422 U.S. 806, 95 S.Ct. 2525. See, also, Crim.R. 44.
 {¶ 62} "In order to establish an effective waiver of [the] right to counsel, the trial court must make sufficient inquiry [of the defendant] to determine whether the defendant fully understands and intelligently relinquishes that right." Gibson, at paragraph two of the syllabus.
 {¶ 63} In verifying that a defendant's waiver of counsel is made knowingly, voluntarily, and intelligently, a trial court should determine whether the defendant was advised of the dangers and disadvantages of self representation. See Gibson, at 377. See, also,Faretta, at 835; State v. Weiss (1993), 92 Ohio App.3d 681, 686,637 N.E.2d 47. The trial court should also consider whether the defendant was advised of the nature of the charges and the range of allowable punishments, and, in addition, may consider whether the trial court advised the defendant of the possible defenses to the charges and applicable mitigating circumstances. See Gibson, 45 at 377, citingVon Moltke v. Gillies (1948), 332 U.S. 708, 724, 68 S.Ct. 316. A court may also consider various other factors, including the defendant's age, education, and legal experience. State v. Doane (1990),69 Ohio App.3d 638, 647, 591 N.E.2d 735.
 {¶ 64} It seems evident from the record that, even after the State emphasized the need for the trial court to conduct some inquiry before allowing Flesher to represent himself, the trial court failed to insure in any way that Flesher was making a knowing, voluntary and intelligent waiver of counsel. Accordingly, the trial court erred in allowing Flesher to proceed unrepresented by counsel and this assignment of error is meritorious.
 Effective Assistance of Counsel {¶ 65} Flesher's fourth assignment of error claims:
 {¶ 66} "The acts and omissions of defense counsel deprived Appellant of his right to effective assistance of counsel."
 {¶ 67} In establishing a claim of ineffective assistance of trial counsel, a defendant *Page 9 
must make a two-part showing: First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Strickland v.Washington (1986), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Id. Essentially, there is a "but for" test; but for counsel's errors, there is a reasonable probability that the outcome of the trial would be different. Id. at 694. Unless a defendant makes both showings, "it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Id. As to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.
 {¶ 68} Here, Flesher first claims that he received ineffective assistance based on counsel's failure to file a motion to suppress evidence stemming from the alleged illegal entry and arrest conducted by the police at Flesher's residence. Flesher bases this claim on the fact that the police arrived at his home with an arrest warrant for a misdemeanor that specifically ordered that it not be served at Flesher's residence. Notably, this entry and arrest resulted in Flesher being charged with two counts of assault on a police officer.
 {¶ 69} This court was faced with nearly identical facts in State v.Christian (Mar. 21, 2005), 7th Dist. No. 02 CA 170. In that case, there was conflicting evidence presented at trial in regard to the claim that the officer unlawfully entered the defendant's residence in violation of his Fourth Amendment right to be free from unlawful searches and seizures. Based on the record, this court found that it was not clear whether the officer's entry was consensual. However, this court concluded that the resolution of this issue was not crucial to its decision. This court stated that, whether the officer illegally entered the home or not, the defendant must still prove that the result of his trial would have differed if his counsel had prevailed on a motion to suppress. This court explained:
 {¶ 70} "The felonious assault of an officer after an unlawful entry is not justified or *Page 10 
privileged conduct. State v. Howard (1991), 75 Ohio App.3d 760, 770,600 N.E.2d 809. Even if we assume for the sake of argument that Officer Porter's entry into the Yaggi home was unlawful, Appellant must still prove that the result of his trial would have differed.
 {¶ 71} "In Appellant's suppression argument, he asserts that but for the officer's entry into the home, he would never have had the opportunity to commit felonious assault on a peace officer. Alternatively, he claims that evidence of the assault would be inadmissible. However, while individuals can lawfully refuse consent to a warrantless entry and/or search, this right to refuse entry is limited. Howard, 75 Ohio App.3d 760, 771, 600 N.E.2d 809, citingMiddleburg Heights v. Theiss (1985), 28 Ohio App.3d 1, 501 N.E.2d 1226, syllabus paragraph two. Even though an officer may unlawfully enter a private residence, the residence's occupants are not privileged to assault the officers after this unlawful entry. Id. at 5,501 N.E.2d 1226. While an occupant can refuse to consent to an entry and search, such, `as locking or closing the door or physically placing one's self in the officer's way,' the assertion of the right to refuse consent to a search cannot itself constitute a crime; refusal cannot include violence against an officer. Howard at 772, 600 N.E.2d 809; Middleburg at 4,501 N.E.2d 1226.
 {¶ 72} "It is worth noting that unlike the situation where a defendant is charged with resisting arrest, a lawful arrest is not an element of felonious assault on a peace officer, which prohibits one from knowingly causing or attempting to cause physical harm to a peace officer by means of a deadly weapon. R.C. § 2903.11(A)(2).
 {¶ 73} "Thus, even if we assume Officer Porter's entry into the Yaggi residence was unlawful, Appellant's commission of felonious assault after that entry was in no way justified or privileged. Thus, his argument on this issue lacks merit. Appellant was in no way prejudiced by his counsel's failure to file a motion to suppress because there was no reasonable basis to believe that such motion could be granted." Id at ¶¶ 24-27.
 {¶ 74} Following our logic in Christian, we conclude this assignment of error is meritless as Flesher's counsel could not be considered ineffective for failing to file a futile *Page 11 
motion to suppress.
 {¶ 75} Next, Flesher claims that counsel was ineffective for failing to investigate whether insanity should have been raised as a defense. No evidence in the record suggests defendant was legally incompetent to stand trial. In fact, the psychologist who conducted Flesher's competency evaluation came to the opposite conclusion — that he was in fact competent. Similarly, no evidence in the record indicates that Flesher "did not know, as a result of a severe mental disease or defect, the wrongfulness of his acts" to support an insanity defense. R.C.2901.01(A)(14); State v. Tibbetts (2001), 92 Ohio St.3d 146, 164, 165. Because the record contains no factual or legal basis to support Flesher's assertion that he may have had a viable insanity defense, and more importantly, because there is no way of knowing whether counsel did or did not investigate an insanity defense, Flesher has failed to demonstrate that defense counsel was ineffective. This assignment of error is also meritless.
 {¶ 76} Finally, as his last assignment of error, Flesher claims:
 {¶ 77} "The combined effect of the errors identified herein deprived Appellant of a fair trial."
 {¶ 78} In light of our resolution of Flesher's third assignment of error, this assignment is rendered moot.
 {¶ 79} Accordingly, the judgment of the trial court is reversed, Flesher's convictions are vacated and this case is remanded for further proceedings.
Donofrio, J., concurs.
 Waite, J., concurs. *Page 1