OPINION
{¶ 1} Defendant-appellant, Terry Endsley, appeals from a Columbiana County Common Pleas Court judgment convicting him of aggravated vehicular homicide following his no contest plea and the sentence that followed.
 {¶ 2} On or about February 10, 2002, appellant was involved, as the driver, in a motor vehicle accident. His passenger, Benjamin Kastanek, died as a result of the accident.
 {¶ 3} Appellant was also seriously injured in the crash. At the hospital, appellant's blood was drawn for purposes of medical treatment. A toxicology report revealed that appellant had a blood alcohol content of .171.
 {¶ 4} A Columbiana County grand jury indicted appellant on May 2, 2003, on one count of aggravated vehicular homicide, a second-degree felony in violation of R.C. 2903.06(A)(1). R.C. 2903.06(A)(1) provides, in pertinent part, that no person, while operating a motor vehicle shall cause the death of another as the proximate cause of committing a violation of R.C. 4511.19(A), the driving while under the influence of alcohol or drugs statute. Three months later, a grand jury returned a superseding indictment amending the charge to a first-degree felony. It did so by adding a specification that appellant was driving under a suspended license at the time of the crash. According to R.C.2903.06(B)(2), aggravated vehicular homicide in violation of R.C.2903.06(A) is elevated to a first degree felony if at the time of the offense, the offender was driving under a suspension.
 {¶ 5} Appellant filed a motion to suppress blood alcohol test results. He alleged, among other things, that his blood sample was not taken voluntarily and that it was not collected in accordance with R.C.4511.19(D). He also filed a motion to dismiss the specification of driving under suspension. Here appellant alleged that the proceedings under which the suspension was ordered were unconstitutional and, therefore, could not be used to enhance the crime charged. The court held a hearing on the motions. It found that plaintiff-appellee, the State of Ohio, failed to establish substantial compliance with the two-hour rule for the drawing of blood. However, it held that medical blood test results were admissible with expert testimony for purposes of establishing a violation of R.C. 4511.19(A)(1). Additionally, it overruled appellant's motion to dismiss the specification.
 {¶ 6} After the court overruled his motions, appellant entered a no contest plea. The court found appellant guilty and sentenced him to five years in prison. Appellant filed a timely notice of appeal on September 10, 2004.
 {¶ 7} Appellant raises eight assignments of error, the first of which states:
 {¶ 8} "DEFENDANT/APPELLANT WAS UNFAIRLY PREJUDICED AND HIS RIGHT TO DUE PROCESS WAS VIOLATED BY THE UNJUSTIFIABLE DELAY BETWEEN THE COMMISSION OF THE OFFENSE AND THE INDICTMENT OF DEFENDANT/APPELLANT."
 {¶ 9} Appellant argues that appellee's delay in indicting him was unjustifiable and prejudicial. He claims that because of the delay he was unable to obtain an independent analysis of his blood sample. Additionally, he claims that he had no opportunity to have the vehicle involved in the crash inspected by an accident reconstruction expert because he did not know he would be charged with a crime until 15 months after the crash.
 {¶ 10} As appellee notes, appellant failed to raise this issue in the trial court. When an appellant fails to raise pre-indictment delay by the state in the trial court, the issue is waived absent plain error. Statev. Metz (Apr. 21, 1998), 4th Dist. No. 96-CA-48. Thus, we will review this issue for plain error.
 {¶ 11} In order to determine whether a pre-indictment delay deprived a defendant of due process, the court must use a burden-shifting test. First, the defendant must demonstrate that he was actually or substantially prejudiced by the pre-indictment delay. State v. Whiting
(1998), 84 Ohio St.3d 215, 217, 702 N.E.2d 1199, confirming State v.Luck (1984), 15 Ohio St.3d 150, 472 N.E.2d 1097. If he makes this showing, the burden then shifts to the state to produce evidence of a justifiable reason for the delay. Id. The court then views the prejudice in light of the state's reason for the delay. Id.
 {¶ 12} When a defendant asserts that a pre-indictment delay violated his due process rights, we may not presume prejudice. Metz, 4th Dist. No. 96-CA-48. Here, appellant alleges prejudice because he was not able to obtain an independent analysis of his blood sample and because he had no opportunity to have the vehicle involved in the crash inspected by an accident reconstruction expert. However, appellant cannot demonstrate actual prejudice. He merely speculates as to what prejudice he may have suffered.
 {¶ 13} A statement regarding prejudice by the United States Supreme Court as quoted in State v. Starks (March 6, 1986), 8th Dist. No. 50087, is particularly relevant:
 {¶ 14} "`No actual prejudice to the conduct of the defense is alleged or proved, and there is no showing that the Government intentionally delayed to gain some tactical advantage over appellees or to harass them. Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statutes of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment, * * * [the] due process claims are speculative and premature.'" Id., quoting United Statesv. Marion (1971), 404 U.S. 307, 325-26, 92 S.Ct. 455, 30 L.Ed.2d 468.
 {¶ 15} While in this case appellant alleges prejudice, he has not demonstrated that such prejudice actually exists nor has he suggested the state intentionally delayed to gain a tactical advantage over him. He too is relying on the possibility that evidence was lost as a result of the delay.
 {¶ 16} Furthermore, as we will discuss later, the trial court should have suppressed the blood test results. Thus, appellant cannot demonstrate that he was prejudiced by the delay in regard to testing his blood sample. Additionally, appellant eventually admitted that his drinking and driving caused the death of his friend. (Tr. 130). Therefore, an accident reconstruction expert would likely find that was the cause of the crash.
 {¶ 17} Hence, appellant cannot demonstrate actual prejudice in the state's pre-indictment delay. Accordingly, appellant's first assignment of error is without merit.
 {¶ 18} Appellant's second assignment of error states:
 {¶ 19} "BOTH THE ORIGINAL INDICTMENT AND THE SUPERSEDING INDICTMENT RETURNED AGAINST DEFENDANT/APPELLANT WERE FATALLY DEFECTIVE."
 {¶ 20} The superseding indictment under which the state proceeded alleged that appellant, while operating a motor vehicle, did cause Kastanek's death, as the proximate result of committing a violation of R.C. 4511.19(A), and while operating the motor vehicle, appellant was driving under a suspension imposed under R.C. 4507, in violation of R.C.2903.06(A)(1).
 {¶ 21} R.C. 2903.06(A)(1) provides, in part, that no person, while operating a motor vehicle, shall cause the death of another as the proximate result of committing a violation of R.C. 4511.19(A). R.C.4511.19(A)(1) provides that, "[n]o person shall operate any vehicle, * * * if, at the time of the operation, any of the following" conditions apply. It then lists nine conditions.[1]
 {¶ 22} Appellant argues the indictments were defective because they did not specify which subsection of R.C. 4511.19(A) he was accused of violating. He further notes that the bill of particulars also failed to identify the subsection of R.C. 4511.19(A) that he violated. Additionally, appellant argues that the superseding indictment did not put him on notice as to what suspension appellee intended to rely on to elevate the offense from a second degree to a first degree felony.
 {¶ 23} Appellant relies on State v. Headley (1983), 6 Ohio St.3d 475,453 N.E.2d 716, for support. In Headley, the Ohio Supreme Court held that the "type of controlled substance involved in the crime of aggravated trafficking under R.C. 2925.03 is an essential element which must be included in the indictment, the omission of which cannot be cured by amendment under Crim.R. 7(D)." Id. at paragraph two of the syllabus.
 {¶ 24} As was the case with appellant's first assignment of error, appellant failed to raise the issue of a defective indictment with the trial court. Thus again, appellant has waived all but plain error. InState v. Haberek (1988), 47 Ohio App.3d 35, 43, 546 N.E.2d 1361, the Eighth District noted, in a case where the defendant alleged a deficient indictment on appeal, that the defendant was provided with a bill of particulars. It then stated, "Ambiguity, if any, in the indictment which was not cured by the bill of particulars should have been brought to the attention of the court. Since defendant made no such request or motion it is presumed he possessed sufficient notice of the charges; any error in this regard is waived." Id.
 {¶ 25} Furthermore, even if appellant had raised this issue in the trial court he would not have prevailed. The Ohio Supreme Court has set out what is required in an indictment as follows:
 {¶ 26} "The sufficiency of an indictment is subject to the requirements of Crim.R. 7 and the constitutional protections of the Ohio and federal Constitutions. Under Crim.R. 7(B), an indictment may be made in ordinary and concise language without technical averments or allegations not essential to be proved. The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged.'
 {¶ 27} "An indictment meets constitutional requirements if it `first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. * * * "Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged."' Hamling v. United States
(1974), 418 U.S. 87, 117-118, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590, 621, quoting United States v. Hess (1888), 124 U.S. 483, 487, 8 S.Ct. 571, 573,31 L.Ed. 516, 518." State v. Childs (2000), 88 Ohio St.3d 558, 564-65,728 N.E.2d 379.
 {¶ 28} Here, appellant was charged with aggravated vehicular homicide. The indictment charged the offense in the words of the statute. It also provided a statement of the facts and circumstances to inform him of the specific offense. Specifically, the indictment put appellant on notice that he was charged with causing Kastanek's death, as a result of operating a motor vehicle while under the influence of alcohol or drugs, and while driving with a suspended license. This statement fairly informed appellant of the charges against him.
 {¶ 29} Appellant also argues that the indictment should have advised him of what license suspension it was referring to. Such specificity was not required. In other cases, courts have found similar specifics were not necessary in the indictment. For instance, in an indictment for manslaughter, the specific felony or misdemeanor relied upon need not be pleaded in the indictment. State v. Whitley (Jan. 8, 1987), 4th Dist. No. 1225. And in State v. Smith, 2d Dist. No. 2001-CA-98, 2002-Ohio-4118, the defendant argued that the indictment was not specific because it did not identify the mechanism that caused the victim's death. In response the court noted, "we are not dealing with different offenses having penalties of differing severity. Regardless of the particular mechanism by which the decedent's death is caused, the crime is Murder, punishable as provided for in R.C. 2929.02." Id. at ¶ 13.
 {¶ 30} Furthermore, while appellant argues that he was not aware of what driving suspension the indictment referred to, he filed a transcript from the very case that the suspension arose from. Hence, he must have been aware of the suspension to which the indictment referred.
 {¶ 31} Thus, the indictment against appellant was not defective. Accordingly, appellant's second assignment of error is without merit.
 {¶ 32} Appellant's third assignment of error states:
 {¶ 33} "THE TRIAL COURT ERRED IN ITS JANUARY 28, 2004 DECISION THAT THE MEDICAL BLOOD TESTING RESULTS WERE ADMISSIBLE WITH EXPERT TESTIMONY FOR PURPOSES OF ESTABLISHING A VIOLATION OF O.R.C. 4511.19(A)(1) AS THERE WAS MORE THAN JUST A FAILURE OF THE STATE TO ESTABLISH SUBSTANTIAL COMPLIANCE WITH THE TWO (2) HOUR RULE FOR THE DRAWING OF THE SUBJECT BLOOD."
 {¶ 34} In ruling on appellant's motion to suppress the blood test results, the trial court found that appellee failed to establish substantial compliance with the two-hour rule for the drawing of blood and that the deviation was not de minimus. However, the court ruled that the medical blood testing results were admissible with expert testimony for the purpose of establishing a violation of R.C. 4511.19(A)(1).
 {¶ 35} Our standard of review with respect to a motion to suppress is first limited to determining whether the trial court's findings are supported by competent, credible evidence. State v. Winand (1996),116 Ohio App.3d 286, 288, 688 N.E.2d 9, citing Tallmadge v. McCoy
(1994), 96 Ohio App.3d 604, 608, 645 N.E.2d 802. Such a standard of review is appropriate as, "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Venham (1994), 96 Ohio App.3d 649, 653,645 N.E.2d 831. An appellate court accepts the trial court's factual findings and relies upon the trial court's ability to assess the witness's credibility, but independently determines, without deference to the trial court, whether the trial court applied the appropriate legal standard. State v. Rice (1998), 129 Ohio App.3d 91, 94, 717 N.E.2d 351. A trial court's decision on a motion to suppress will not be disturbed when it is supported by substantial credible evidence. Id.
 {¶ 36} In Newark v. Lucas (1988), 40 Ohio St.3d 100, at paragraph one of the syllabus, 532 N.E.2d 130, the Ohio Supreme Court held that in a criminal prosecution for a violation of R.C. 4511.19(A)(2), (3) or (4)[2] the results of a properly administered bodily substances test are admissible only if the bodily substance is withdrawn within two hours of the time of the alleged violation. However, it further held that in a criminal prosecution for violation of R.C. 4511.19(A)(1), the results presented with expert testimony may be admissible despite the fact that the bodily substance was withdrawn more than two hours from the time of the alleged violation. Id. at paragraph two of the syllabus.
 {¶ 37} The Court explained the reasoning for this distinction by noting:
 {¶ 38} "In prosecutions for violations of such sections [as R.C.4511.19(A)(1)], the amount of alcohol found as a result of the chemical testing of bodily substances is only of secondary interest. See Taylor, Drunk Driving Defense (2 Ed. 1986) 394, Section 6.0.1. The defendant's ability to perceive, make judgments, coordinate movements, and safely operate a vehicle is at issue in the prosecution of a defendant under such section. It is the behavior of the defendant which is the crucial issue. The accuracy of the test is not the critical issue as it is in prosecutions for per se violations." Id. at 104.
 {¶ 39} In the present case, the crash occurred at 4:43 a.m. (Tr. 16). The exact time appellant's blood sample was taken was not known. However, it was sometime between 6:20 a.m. and 7:04 a.m. (Tr. 39-40). Since appellee could not demonstrate that the blood was drawn within the two-hour limit, it seems that the test results were not admissible to show a violation of R.C. 4511.19(A)(1)(b), (c), or (d). However, as the trial court found, the results may have been admissible, with expert testimony, as evidence in establishing a violation of R.C.4511.19(A)(1)(a).
 {¶ 40} But appellant argues that while results of a properly administered blood test may be admissible with expert testimony despite a violation of the two-hour rule, this is only the case when the two-hour limit is the only violation of the Ohio Department of Health (ODH) regulations or other statutory requirements. Appellant argues that he presented evidence that the blood sample was not taken in accordance with ODH and statutory requirements. He also points to a footnote in Lucas,
where the Court noted that the prosecution must also establish that the test was properly administered and analyzed in accordance with the remainder of R.C. 4511.19(B).[3] Id. at fn. 7.
 {¶ 41} Appellant alleges numerous violations of the ODH regulations including: the lack of a tamper proof seal, no chain of custody, the lack of a valid LT permit for the laboratory technician who analyzed the sample, failure to preserve the sample for one year, and the failure to inform him or his family that they had the right to have the blood sample preserved for independent testing. Appellant basically takes issue with the fact that appellee may not have shown substantial compliance with R.C. 4511.19(D)(1). This section provides:
 {¶ 42} "In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense, the court may admit evidence on the concentration of alcohol, drugs of abuse, or a combination of them in the defendant's * * * blood * * * or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within two hours of the time of the alleged violation.
 {¶ 43} "When a person submits to a blood test at the request of a law enforcement officer * * *, only a physician, a registered nurse, or a qualified technician, chemist, or phlebotomist shall withdraw blood for the purpose of determining the alcohol, drug, or alcohol and drug content * * *
 {¶ 44} "The bodily substance withdrawn shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section3701.143 of the Revised Code."
 {¶ 45} Appellant's blood was drawn, not at the direction of law enforcement officers, but by medical personnel for medical purposes. (Tr. 38-39). Appellee argues that because appellant's blood was not drawn at the request of a law enforcement officer, but rather by medical personnel for medical testing, R.C. 4511.19(D)(1)'s requirements and the ODH regulations do not apply.
 {¶ 46} A recent Ohio Supreme Court decision is dispositive of this issue. In State v. Mayl, 106 Ohio St.3d 207, 2005-Ohio-4629, as in this case, the defendant pled no contest to aggravated vehicular homicide in violation of R.C. 2903.06(A)(1) after the trial court denied his motion to suppress blood test results. The trial court held that the testing requirements of R.C. 4511.19(D) and Ohio Admin. Code 3701-35-05 were not applicable to prosecutions for aggravated vehicular homicide. The defendant appealed arguing that the requirements do indeed apply. The Second District found that R.C. 4511.19(D)'s requirements, as well as the ODH regulations, apply to blood test results used in an R.C. 2903.06(A)(1) prosecution.
 {¶ 47} The Supreme Court held:
 {¶ 48} "When results of blood-alcohol tests are challenged in an aggravated vehicular-homicide prosecution that depends upon proof of an R.C. 4511.19(A) violation, the state must show substantial compliance with R.C. 4511.19(D)(1) and Ohio Adm. Code Chapter 3701-53 before the test results are admissible.
 {¶ 49} "When a blood-alcohol test is not requested by law enforcement but is administered in connection with medical treatment by qualified medical personnel and analyzed in an accredited laboratory, the state must show substantial compliance with R.C. 4511.19(D)(1) and Ohio Adm. Code Chapter 3701-53 before the test results are admissible in a prosecution depending upon proof of an R.C. 4511.19(A) violation." Id. at paragraphs one and two of the syllabus.
 {¶ 50} In reaching its holdings, the Court examined R.C. 4511.19(D)(1) and the regulations set out in the Administrative Code describing how bodily substance samples should be collected (Ohio Adm. Code 3701-53-05) and tested (Ohio Adm. Code 3701-53-03(A)), along with regulations requiring certification of personnel (Ohio Adm. Code 3701-53-07(A)) and laboratory requirements (Ohio Adm. Code 3701-53-06(A)). The Court noted that these regulations have been designed to ensure the accuracy of bodily substance test results. Id. at ¶ 40.
 {¶ 51} The Court also examined the evidence presented at the suppression hearing. It noted that the state called medical personnel to testify about the procedures used in drawing and testing Mayl's blood. The nurse who drew his blood testified that it was done for medical purposes only. She noted that she used a non-alcohol substance to swab Mayl's skin and drew the blood into a vacuum-sealed, glass bottle. The vice president of the lab testified that the lab was certified by the College of American Pathologists, was federally registered for high-complexity testing, and complied with pertinent regulations governing clinical laboratories. The technologist who ran Mayl's test was certified by the Association of Clinical Pathologists. She stated that the blood sample was not refrigerated for one hour and 45 minutes before it was tested, but was refrigerated afterwards. Testimony also indicated that the machine used to test the blood was properly calibrated. The state also presented evidence of proper chain of custody and there was no evidence of tampering.
 {¶ 52} The Court concluded that the burden was on the state to show substantial compliance with R.C. 4511.19(D)(1) and Ohio Adm. Code Chapter 3701-53 before the test results were admissible. Id. at ¶ 48. In discussing substantial compliance, the Court, quoting from State v.Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71 stated:
 {¶ 53} "`[R]igid compliance with the Department of Health regulations is not necessary for test results to be admissible. * * * To avoid usurping a function that the General Assembly has assigned to the Director of Health, however, we must limit the substantial compliance standard set forth in [State v.] Plummer [(1986), 22 Ohio St.3d 292,490 N.E.2d 902] to excusing only errors that are clearly de minimis. Consistent with this limitation, we have characterized those errors that are excusable under the substantial-compliance standard as "minor procedural deviations."'" Id. at ¶ 49, quoting Burnside, at ¶ 34.
 {¶ 54} The Court concluded that in several instances where Mayl alleged deviations from the ODH regulations, there was substantial compliance. These deviations included the failure to refrigerate the sample for one hour and 45 minutes prior to testing and the use of a gel anticoagulant as a solid. Id. at ¶ 50, fn. 2.
 {¶ 55} But the Court also concluded that two of the alleged deviations did not meet the substantial compliance standard. Mayl also challenged the lack of permits from the Director of Health and the lab's failure to maintain the blood sample for one year. The Court found that while the lab, the vice president of operations for the hospital lab, and the lab technician who tested Mayl's blood may have qualified for permits under Ohio Adm. Code 3701-53-07(A), they did not apply for or have them. Additionally, the Court found that disposing of the blood sample within three to five days after testing was not substantial compliance with Ohio Adm. Code 3701-53-06(A), which requires the lab to save the sample for a year. The Court concluded, "[w]e cannot excuse the absence of the proper permits and the disposal of the sample within a matter of days as minor procedural deviations. Consequently, the state has not shown substantial compliance with ODH regulations." Id. at ¶ 52.
 {¶ 56} The Court then went on to address the state's argument that it was not required to show that the blood test complied with ODH regulations because Mayl submitted to the test as part of his medical treatment, not at the request of law enforcement. Thus, the state contended that tests performed as part of medical treatment were not covered by R.C. 4511.19(D)(1). The Court rejected this argument reasoning that R.C. 2317.02(B)(2), which waives the patient-physician privilege when law enforcement seeks to obtain certain test results, does not exempt a hospital from complying with the R.C. 4511.19(D)(1) testing standards. Id. at ¶ 55.
 {¶ 57} Finally, the Court noted that R.C. 4511.19(D)(1) applies to all prosecutions requiring proof of a violation of R.C. 4511.19(A) or (B). The Court stated that it does not matter whether the prosecution is pursued as a "per se"[4] violation or an "under the influence"[5] violation. Id. at ¶ 57.
 {¶ 58} Thus, in this case the state was required to show substantial compliance with R.C. 4511.19(D)(1) and the applicable ODH regulations in order for the blood test results to be admissible. The state failed to do so.
 {¶ 59} Nicholas O'Donnell testified for the state at appellant's suppression hearing. He is the chief of pathology and the director of chemistry and toxicology at Summit Pathology and Associates, which contracts its services to Summa Health Systems. In his professional capacity, O'Donnell oversees the toxicology lab that analyzed appellant's blood sample.
 {¶ 60} O'Donnell testified that he holds director permits for alcohol and drug testing issued by the ODH. (Tr. 36). Additionally, he stated that the lab is accredited by the College of American Pathologists. (Tr. 38). O'Donnell himself did not analyze appellant's blood, but he supervises the technician who did. (Tr. 45). He reviewed appellant's chart and concluded that the lab's "standard operating procedure" was followed. (Tr. 38).
 {¶ 61} But O'Donnell also testified to the following. Typically, the lab retains toxicology samples for four to six weeks. (Tr. 44). He opined that this standard procedure was followed in this case. (Tr. 44).
 {¶ 62} Ohio Adm. Code 3701-53-06(A) provides in part: "All positive blood, * * * shall be retained in accordance with rule 3701-53-05 of the Administrative Code for a period of not less than one year, after which time the specimens may be discarded unless otherwise directed in writing from a court."
 {¶ 63} O'Donnell's testimony indicated that appellant's sample was likely retained for only four to six weeks. In Mayl, the sample was retained for only three to five days after testing. The Court concluded that such a short retention time could not be considered substantial compliance with Ohio Adm. Code 3701-53-06(A). While in this case the lab retained the blood sample for a longer time than in Mayl, retention of four to six weeks cannot be considered substantial compliance with a regulation that calls for retention for one year.
 {¶ 64} Additionally, O'Donnell testified that the lab technician who performed the test was a medical technologist with a four-year degree. (Tr. 45). However, he stated that the technologist did not have a valid laboratory technician (LT) permit as issued by the ODH. (Tr. 48). O'Donnell stated that while the technician met the requirements to obtain the LT permit, she never applied for or obtained the permit. (Tr. 50-51).
 {¶ 65} Ohio Adm. Code 3701-53-07(A) provides: "Blood * * * tests for alcohol shall be performed in a laboratory by an individual who has a laboratory director's permit or, under his or her general direction, by an individual who has a laboratory technician's permit."
 {¶ 66} Like the technician in Mayl, the technician here, although quite likely qualified to test blood for medical purposes, never applied for or obtained the proper permit under Ohio Adm. Code 3701-53-07(A). The Court found that it could not excuse the absence of proper permits as a minor procedural deviation.
 {¶ 67} Finally, O'Donnell testified that a chain of custody was not maintained for appellant's blood sample. (Tr. 43). He stated that this was considered a standard medical case. (Tr. 43). O'Donnell testified that chain of custody is reserved for forensic cases. (Tr. 43).
 {¶ 68} Ohio Adm. Code 3701-53-06(A) provides in part: "Chain of custody and the test results for evidential alcohol and drugs of abuse shall be identified and retained for not less than three years, after which time the documents may be discarded unless otherwise directed in writing from a court."
 {¶ 69} Since O'Donnell plainly stated that the lab did not maintain a chain of custody for appellant's sample, there is no way that the state could show substantial compliance with this requirement.
 {¶ 70} Given the failure to maintain the blood sample for a period even close to one year, the lab technician's absence of a proper permit, and the nonexistent chain of custody, we cannot conclude that there was substantial compliance with ODH regulations. Consequently, the trial court should have suppressed the blood test results. Accordingly, appellant's third assignment of error has merit.
 {¶ 71} Appellant's fourth assignment of error states:
 {¶ 72} "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE RESULTS OF THE DEFENDANT/APPELLANT'S BLOOD ANALYSIS AS CONTAINED IN HIS MEDICAL RECORDS AS THE SAME WERE ILLEGALLY OBTAINED BY THE STATE OF OHIO."
 {¶ 73} Since we have already concluded that the trial court should have suppressed appellant's blood test results, appellant's fourth assignment of error is moot.
 {¶ 74} Appellant's fifth assignment of error states:
 {¶ 75} "THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO DISMISS SPECIFICATION (SUPERCEDING INDICTMENT) DUE TO THE CONSTITUTIONAL INFIRMITY OF THE PRIOR CONVICTION GIVING RISE TO THE SUSPENSION RELIED UPON TO ELEVATE THE PRESENT OFFENSE TO A FELONY OF THE FIRST DEGREE."
 {¶ 76} Appellant notes that while it is unclear what suspension the indictment refers to, presumably it was meant to refer to his suspension arising out of proceedings in municipal court on November 29, 2001. He filed a transcript of those proceedings with the trial court.
 {¶ 77} Appellant alleges that at the 2001 hearing, the trial court failed to engage him in a meaningful dialogue in violation of Crim.R. 11(E), regarding the constitutional rights he was waiving by entering a no contest plea to a D.U.I. charge. He further contends that the court failed to discuss with him the possible jail sentence he could receive or the possible license suspension he faced. Next, appellant asserts that the court never heard an explanation of the facts to support its guilty finding. Thus, the court should not have found him guilty based solely on his no contest plea. Therefore, appellant contends that because his conviction in the prior case was constitutionally infirm, it could not be used to enhance the charge of aggravated vehicular homicide from a second-degree to a first-degree felony.
 {¶ 78} Firstly, appellee may not have been required in this case to demonstrate appellant's prior plea was constitutionally valid. It only needed to demonstrate that appellant's license was indeed suspended at the time of the crash, since that was the aggravating factor.
 {¶ 79} Secondly, if appellee was required to rely on appellant's prior conviction, State v. Culberson (2001), 142 Ohio App.3d 656,756 N.E.2d 734, governs this case. In that case, this court held that, "when a criminal defendant is collaterally challenging a prior penalty-enhancing conviction on the basis of constitutional infirmity, the only recognized constitutional infirmity is that he or she was denied the fundamental right to be represented by counsel, or the necessary corollary, an invalid waiver of the right to counsel." Id. at 662-63. In that case, we reversed the trial court's suppression of the defendant's prior D.U.I. convictions. The defendant had argued in the trial court that his pleas to the prior D.U.I.'s were not made knowingly, intelligently, and voluntarily. We followed the U.S. Supreme Court's decision in Custisv. United States (1994), 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517, which held that a criminal defendant can collaterally challenge the constitutional validity of a prior conviction only on the ground that he was denied the fundamental right to be represented by counsel in the prior proceeding. Culberson, 142 Ohio App.3d at 661, citing Custis,511 U.S. at 496. We pointed to the Court's reasoning noting that "collateral attacks on previous convictions should be limited to alleged uncounseled prior convictions because (1) there are administrative difficulties in having to rummage through frequently nonexistent or difficult-to-obtain state court files from another era and from far-flung jurisdictions, and (2) there is an interest in promoting finality of judgments." Id. at 662, citing Custis, 511 U.S. at 496-497. We also noted that to allow a defendant to challenge his prior convictions in a collateral proceeding would in some respects be an attempt to circumvent the post-conviction relief limitations period. Id. Thus, we reversed the trial court's judgment suppressing the defendant's prior convictions.
 {¶ 80} In this case, appellant did not allege that he was not represented by counsel in his prior case or that he entered an invalid waiver of the right to counsel. Thus, according to Culberson, appellant cannot collaterally challenge his suspension resulting from his previous D.U.I. conviction. Accordingly, appellant's fifth assignment of error is without merit.
 {¶ 81} Appellant's sixth assignment of error states:
 {¶ 82} "DEFENDANT/APPELLANT DID NOT RECEIVE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL."
 {¶ 83} To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different.Bradley, 42 Ohio St.3d at paragraph three of the syllabus.
 {¶ 84} Appellant bears the burden of proof on the issue of counsel's effectiveness. State v. Calhoun (1999), 86 Ohio St.3d 279, 289,714 N.E.2d 905. In Ohio, a licensed attorney is presumed competent. Id.
 {¶ 85} Appellant argues that his trial counsel was ineffective for several reasons. All but one of his alleged instances of ineffectiveness focus solely on counsel's conduct at the suppression hearing. Since we have determined that the trial court should have granted appellant's motion to suppress, these arguments are now moot. However, we will address appellant's remaining allegation of ineffective assistance of counsel.
 {¶ 86} Appellant contends that his counsel should have raised the constitutional infirmities with his 2001 conviction, in addition to the lack of a meaningful dialogue, and challenged the defects in the indictment. We have already discussed both of these alleged errors. Since appellant could not collaterally challenge his suspension resulting from his previous D.U.I. conviction and since the indictment was not defective, we cannot conclude that his counsel was ineffective for failing to raise these issues. Accordingly, appellant's sixth assignment of error is without merit.
 {¶ 87} Appellant's seventh and eighth assignments of error respectively state:
 {¶ 88} "THE TRIAL COURT ERRED IN IMPOSING A NON-MINIMUM PRISON SENTENCE."
 {¶ 89} "DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE CUMULATIVE EFFECT OF THE SEVEN ASSIGNMENTS OF ERROR AS SET FORTH HEREIN."
 {¶ 90} Given our resolution of appellant's third assignment of error, these assignments of error are moot.
 {¶ 91} For the reasons stated above, appellant's conviction is hereby reversed and his no contest plea is vacated. This matter is remanded for further proceedings pursuant to law and consistent with this opinion.
Vukovich, J., concurs.
DeGenaro, J., concurs.
[1] {¶ a} The conditions are:
{¶ b} "The person is under the influence of alcohol, a drug of abuse, or a combination of them.
{¶ c} "The person has a concentration of eight-hundredths of one per cent or more but less than seventeen-hundredths of one per cent by weight per unit volume of alcohol in the person's whole blood.
{¶ d} "The person has a concentration of ninety-six-thousandths of one per cent or more but less than two hundred four-thousandths of one per cent by weight per unit volume of alcohol in the person's blood serum or plasma.
{¶ e} "The person has a concentration of eight-hundredths of one gram or more but less than seventeen-hundredths of one gram by weight of alcohol per two hundred ten liters of the person's breath.
{¶ f} "The person has a concentration of eleven-hundredths of one gram or more but less than two hundred thirty-eight-thousandths of one gram by weight of alcohol per one hundred milliliters of the person's urine.
{¶ g} "The person has a concentration of seventeen-hundredths of one per cent or more by weight per unit volume of alcohol in the person's whole blood.
{¶ h} "The person has a concentration of two hundred four-thousandths of one per cent or more by weight per unit volume of alcohol in the person's blood serum or plasma.
{¶ i} "The person has a concentration of seventeen-hundredths of one gram or more by weight of alcohol per two hundred ten liters of the person's breath.
{¶ j} "The person has a concentration of two hundred thirty-eight-thousandths of one gram or more by weight of alcohol per one hundred milliliters of the person's urine." R.C. 4511.19(A)(1)(a)-(i).
[2] R.C. 4511.19(A)(1), (2), (3), and (4) were amended on September 23, 2004. They are now contained in R.C. 3411.19(A)(1)(a), (b), (c), and (d).
[3] The requirements of R.C. 4511.19(B) at the time of Lucas are now contained in R.C. 4511.19(D).
[4] R.C. 4511.19(A)(1)(b) through (i) and (B).
[5] R.C. 4511.19(A)(1)(a).