OPINION
{¶ 1} On June 10, 2004, the Richland County Grand Jury indicted appellant, Steven McCraney, on one count of assault on a corrections officer in violation of R.C. 2903.13. Said charge arose from an incident wherein appellant questioned the authority of Corrections Officer Larry Donathan to ask him to perform extra duty. An argument ensued and C.O. Donathan attempted to handcuff appellant, but appellant fought back, grabbing C.O. Donathan's neck and pinning him against the wall.
 {¶ 2} A jury trial commenced on August 11, 2005. The jury found appellant guilty. By judgment entry filed August 15, 2005, the trial court sentenced appellant to twelve months in prison.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE CONVICTION IS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE THE STATE FAILED TO ADDUCE ANY PROOF OF THE CORRECTION'S OFFICER'S AUTHORITY TO ARREST AND RESTRAIN THE PRISON INMATE."
 II {¶ 5} "THE TRIAL COURT ERRED PREJUDICIALLY BY COMPELLING THE CASE TO GO FORWARD WITHOUT RESOLVING THE SPEEDY TRIAL ISSUE AND WITHOUT REPLACING AN ADMITTEDLY `INEFFECTIVE' COURT APPOINTED DEFENSE COUNSEL PRIOR TO TRIAL."
 III {¶ 6} "THE APPELLANT WAS UNCONSTITUTIONALLY DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL IN THE PROCEEDINGS BELOW."
 I {¶ 7} Appellant claims his conviction was against the manifest weight of the evidence. Specifically, appellant claims the state failed to establish the corrections officer's authority to arrest and restrain him. We disagree.
 {¶ 8} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Martin (1983), 20 Ohio App.3d 172, 175. See also,State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 9} Appellant was convicted of assault on a corrections officer in violation of R.C. 2903.13(A)(2)(a) which states the following:
 {¶ 10} "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.
 {¶ 11} "(2) If the offense is committed in any of the following circumstances, assault is a felony of the fifth degree:
 {¶ 12} "(a) The offense occurs in or on the grounds of a state correctional institution or an institution of the department of youth services, the victim of the offense is an employee of the department of rehabilitation and correction, the department of youth services, or a probation department or is on the premises of the particular institution for business purposes or as a visitor, and the offense is committed by a person incarcerated in the state correctional institution, by a person institutionalized in the department of youth services institution pursuant to a commitment to the department of youth services, by a parolee, by an offender under transitional control, under a community control sanction, or on an escorted visit, by a person under post-release control, or by an offender under any other type of supervision by a government agency."
 {¶ 13} Nowhere in the elements of the offense is the requirement that the state establish the authority of a corrections officer to arrest and restrain an inmate. Rather, the elements center upon the actions of the inmate.
 {¶ 14} The evidence establishes Larry Donathan was a corrections officer at the Richland Correctional Institution and appellant was an inmate therein on the day of the incident sub judice. T. at 112, 114. C.O. Donathan wanted two inmates to clean up the yard. T. at 114, 132. C.O. Theresa Jones told C.O. Donathan inmate Ward and appellant had been assigned extra duty. Id. Inmate Ward reported and went off to work without incident. T. at 115. Appellant arrived and questioned C.O. Jones about C.O. Donathan's authority to ask him to perform the extra duty. T. at 115, 137. C.O. Donathan asked appellant three times if he was going to perform the extra duty. T. at 204-205. Appellant refused and responded with profane language. T. at 115-116, 139. At this point, C.O. Donathan decided to handcuff appellant, but appellant resisted. T. at 116, 142-144, 205. C.O. Donathan described the subsequent events as follows:
 {¶ 15} "Apparently before I could get the sleeve up he decided he didn't want to be cuffed up. So what he done was he swung around and I tried to move him up against the wall so I could secure him in place, and try to retain that wrist. And he swung around again, forcing me off balance and backing up, at which time I activated my man down alarm to call for additional assistance. As he approached me I tried to secure his right wrist, for which he spooned out of, or caused me to lose my balance, for which in turn he grabbed me by the head and spun me around to where I was against a wall just opposite the officer's station.
 {¶ 16} "From there he grabbed me by the neck and started to lift me up off the floor against the wall, and then he grabbed my right shirt, or the right side of my interior chest here to reinforce his pin. At that point in time Charlie was over here trying to pull his strong arm off my neck, for which he was successful for a slight moment, then he shrugged Charlie off, and he went back to grabbing me by the neck, twisting my head, shouting, look at me, calling me a — made several racial statements in respect to bow to the supreme race, I'm a soft-ass Caucasian. He said several other things, but I really can't recall exactly what it was. All I do know is I was trying to break his grip and his hold, but I didn't have any ground underneath my feet. I did manage to get his left wrist secured, I believe, and from there I was able to get him off or get back down on the ground and move back to handcuff him and move him over to the officer station." T. at 116-117.
 {¶ 17} C.O. Charlie Thompson witnessed the incident and corroborated C.O. Donathan's account. T. at 175-176.
 {¶ 18} We find sufficient evidence of an assault by an inmate on a corrections officer on the grounds of a correctional facility. We further find appellant's argument regarding the corrections officer's "authority" not to be valid. This argument is very similar to a conviction for resisting arrest when the underlying offense is not proven. Whether C.O. Donathan had the authority to ask appellant to perform extra duty is separate and apart from the assault.
 {¶ 19} Upon review, we find the jury did not clearly lose its way, and we do not find a manifest miscarriage of justice.
 {¶ 20} Assignment of Error I is denied.
 II {¶ 21} Appellant claims the trial court erred in proceeding to trial when he had voiced his objection to his appointed counsel. Appellant also claims the trial court erred in not addressing the "speedy trial" issue. We disagree.
 {¶ 22} We will address the speedy trial issue first. All pretrial motions are to be in writing and filed with the trial court. Crim.R. 12(C). The filing of a motion to dismiss for a speedy trial violation may be made outside the time requirements set forth in Crim.R. 12(D) because of the very nature of the speedy trial issue. However, a motion on speedy trial violations was not filed sub judice. Without an evidentiary hearing before the trial court to develop the record on this issue, this court is unable to review the issue and as such, it is more appropriate for postconviction relief. State v. Vance, Richland App. Nos. 2003CA0041 and 2003CA0030, 2004-Ohio-258.
 {¶ 23} On the morning of trial, appellant requested a new trial attorney. We note while an accused has a right to counsel, he/she does not have the right to counsel of his/her own choosing. State v. Marinchek (1983), 9 Ohio App.3d 22; Statev. Haberek (1988), 47 Ohio App.3d 35.
 {¶ 24} Appellant argued there was conflict between him and his attorney regarding C.O. Donathan:
 {¶ 25} "THE DEFENDANT: Me and him can't get to terms as far as everybody is looking at my record. They don't want to bring the C.O. — he has a problem in the system as far as being at RICI, with being hostile towards inmates. He doesn't want to examine that. He would rather talk about me. I would have never put my hands on the man if he wouldn't have put his hands on me." T. at 5.
 {¶ 26} After a great deal of discussion with the trial court about the righteousness of his actions vis-á-vis the attitude and reputation of C.O. Donathan, appellant made the following statements about his trial counsel:
 {¶ 27} "THE DEFENDANT: Just by him speaking to me in so many words he doesn't give me the encouragement or even the insight of him being capable enough to win this case.
 {¶ 28} "* * *
 {¶ 29} "THE DEFEDANT: He doesn't sound confident to me to represent me to the fullest. He's telling himself he can't do this, or he's shamming or playing with his mind or himself even to fabricate a situation like that that he can go in there and win. I feel that's ineffective counsel." T. at 9-10.
 {¶ 30} Appellant then refused to speak to the trial court about it any more. T. at 12-13. For the record, defense counsel asked to withdraw given appellant's dissatisfaction and lack of trust and the Disciplinary Rules. T. at 13-14. The trial court denied the request and set forth defense counsel's efforts at representing appellant:
 {¶ 31} "I will say, Mr. Davis, that you and I have had conversation over the last two weeks about this case. You told me about your client telling you that there were other witnesses, but was not able to tell you their identity. You went and got the minutes of the Rules Infraction Board to find out who those people were. You came over here and had us arrange to actually meet with a couple of those people who are at the Richland Correctional Institution. You contacted me about protecting these witnesses if they were to testify against guards, since they had to be in the same situation. I have not seen any lawyer work harder to represent a client in a fifth degree felony than you have. I know your qualifications from having dealt with you for fifteen years. I have seen you represent clients in capital murder cases, and to do that very competently. I have no doubt about your diligence in this case, your preparations in this case, your devotion to your client in this case." T. at 15-16.
 {¶ 32} We find the trial court did not abuse its discretion in denying appellant new counsel and a continuance. Appellant's articulations of his objections to his trial counsel were not sufficient for removal. The fact that counsel refuses to meet a client's wish to do something that is not proper or within the rules of evidence is not sufficient for removal of counsel. We further do not find an abuse of discretion given the trial court's knowledge of the extent of discovery done by trial counsel.
 {¶ 33} Assignment of Error II is denied.
 III {¶ 34} Appellant claims he was denied effective assistance of trial counsel. We disagree.
 {¶ 35} The standard this issue must be measured against is set out in State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011. Appellant must establish the following:
 {¶ 36} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v. Washington [1984],466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 {¶ 37} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."
 {¶ 38} This court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." State v. Post (1987),32 Ohio St.3d 380, 388.
 {¶ 39} Appellant argues his trial counsel failed to file a motion to dismiss for speedy trial violations, failed to file a Crim.R. 29 motion for acquittal and failed to call witnesses on his behalf.
 {¶ 40} In Assignment of Error II we discussed the speedy trial issue. From our review of the record, it is clear appellant was being held on an unrelated felony charge in Summit County and was awaiting trial therefore, the provisions of R.C. 2945.72(A) would apply. See, Motions for Continuance filed January 12, 2005 and July 8, 2005.
 {¶ 41} As for the Crim.R. 29 motion to acquit, subsection (A) states the following:
 {¶ 42} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 43} The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in State v.Bridgeman (1978), 55 Ohio St.2d 261, syllabus:
 {¶ 44} "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 45} As we concluded in Assignment of Error I, there was sufficient credible evidence presented during the trial to overcome a manifest weight of the evidence argument. All the witnesses who testified were in the state's case-in-chief and therefore our discussion in that assignment applies to this assignment. There was substantial evidence, even construing the evidence in favor of appellant, to warrant a denial of a motion for acquittal.
 {¶ 46} Lastly, appellant argues his trial counsel did not call witnesses to substantiate his claim of self-defense. Appellant argues the failure to present any evidence from other inmates on the authority of the corrections officer to detain him rendered his self-defense claim meaningless.
 {¶ 47} As we stated in Assignment of Error I, the emphasis of the criminal charge was appellant's actions, not whether C.O. Donathan had the right to cuff him. Further, the record reveals the views of at least two inmates were imparted to the trial court on the day of the trial upon defense counsel's request. See, Conveyance Orders filed August 9, 2005. The trial court also noted defense counsel's efforts in discussing defense counsel's diligence. T. at 15-16.
 {¶ 48} We can only assume these two witnesses/inmates were not beneficial to appellant's claim and that is why they were not called, or that it was a tactical decision. As cited supra, this court "must accord deference to defense counsel's strategic choices."
 {¶ 49} Upon review, we find the record does not establish any deficient representation by appellant's trial counsel.
 {¶ 50} Assignment of Error III is denied.
 {¶ 51} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed.
Farmer, J. Wise, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio is affirmed.